**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Megan Griego, | No. CV-10-2633-PHX-SMM |
| Plaintiff, | |
| vs. | **MEMORANDUM OF DECISION AND ORDER** |
| City of Surprise, Arizona, a municipal corporation, et al., | |
| Defendants. | |

Pending before the Court is the Summary Judgment Motion by City of Surprise, Arizona, and Jeffrey Mihelich (collectively "Defendants"). (Doc. 52.) Plaintiff has responded, Defendants have replied, and the matter is fully briefed. (Doc. 53; Docs. 56-58.) After reviewing the briefs, and having determined that oral argument is unnecessary,[1] the Court will grant Defendant's motion.

## BACKGROUND

**I.    Factual Background**

Plaintiff was employed by the City of Suprise, Arizona ("the City") as an Economic Development Coordinator (EDC) from May 2007 through April 30, 2010. (Doc. 53 ¶ 1.) In 2008, Jeffrey Mihelich ("Mihelich") was hired by the City; later, in April 2010, his title became Community and Economic Development Director, a position wherein he was

---

[1] Plaintiff's request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

1  responsible for the Economic Development Department, and was Plaintiff's direct
2  supervisor. (Id. ¶¶ 3-5.)

3  On or around April 14, 2010, Mihelich held a staff meeting with employees of the
4  Economic Development Department, including Plaintiff, at which he informed the employees
5  that there was a proposal to reorganize the department. (Id. ¶ 7.) Shortly after the meeting,
6  Plaintiff learned that the proposed reorganization would include the elimination of two EDC
7  positions, including the position she held. (Id. ¶ 8.) If approved by the City Council, the
8  proposed reorganization would take effect July 1, 2010, and the EDC positions would thus
9  be eliminated effective June 30, 2010. (Id. ¶ 10.)

10  The City Council was to hold a budget retreat on April 23 and 24, 2010, to consider
11  the budget for the upcoming fiscal year. (Id. ¶ 11.) Prior to the retreat, the City's Information
12  Security Officer, Gina Busby, was instructed by her supervisor to be alert for suspicious
13  activity. (Id. ¶ 12.) Approximately one day before the retreat, Busby became aware that
14  Plaintiff had emailed City documents to her personal email address; believing that Plaintiff's
15  conduct may have been harmful to the City, Busby reported the matter to her supervisor. (Id.
16  ¶ 13.)

17  On April 24, 2010, Plaintiff attended the budget retreat to speak before the City
18  Council about the proposed reorganization of her department. (Id. ¶ 15.) Mihelich gave
19  Plaintiff some amount of coaching in what to say to the City Council. (Id. ¶ 16.) Mihelich
20  also spoke before the City Council about the proposed reorganization, including the
21  elimination of several positions in the Economic Development Department. (Id. ¶ 22.) Busby
22  also attended the retreat and heard about the proposal to eliminate several positions in the
23  Economic Development Department. (Id. ¶ 23.) Busby became concerned about protecting
24  the City's information, because he was aware of previous incidents when City employees
25  deleted or misappropriated City information after learning they may be terminated. (Id. ¶¶
26  24-25.) Busby was concerned also in light of her knowledge that Plaintiff had previously
27  emailed City documents to a personal email account. (Id. ¶ 25.)

28  As a result, Busby recommended that the City disable computer access for all

1 employees of the Economic Development Department for the remainder of the weekend, a
2 recommendation which was approved by Mihelich and April Reynolds, the director of
3 Human Resources. (Id. ¶ 26.) Busby went to the department to disable computer access, and
4 noticed a large trash bin filled with binders and documents in the office of another Economic
5 Development Department employee, Jeanine Jerkovic. (Id. ¶ 27.) Busby took photographs
6 of the trash bin and showed them to Mihelich, Reynolds, and her supervisor. (Id. ¶ 28.)
7 Busby's supervisor then instructed her to disable building access for all employees of the
8 department for the rest of the weekend. (Id. ¶ 29.)

9 The following Monday, April 26, 2010, building access was restored to the employees
10 of the department, and the employees, including Plaintiff, returned to work. (Id. ¶¶ 31-34.)
11 Some time on that day, City Attorney Michael Bailey was in the department and observed
12 Plaintiff shredding documents in the break room. (Id. ¶ 40.) Bailey contacted Mihelich and
13 reported that Plaintiff was shredding documents, expressed concern that Plaintiff may be
14 shredding public records, and instructed Mihelich to follow up on the matter. (Id. ¶ 41.)
15 Mihelich and Reynolds went to the break room, where Plaintiff was still shredding
16 documents, and asked her to stop. (Id. ¶ 43.)

17 Mihelich and Reynolds then met with Plaintiff, and Mihelich mentioned that there was
18 evidence that Plaintiff had emailed City files to her personal email; Plaintiff admitted that she
19 had done so. (Id. ¶ 45.) At the conclusion of the meeting, the City placed Plaintiff on
20 administrative leave. (Id. ¶ 46.) Mihelich and Reynolds contacted the Interim City Manager
21 Mark Coronado later that day, and informed him of their concerns relating to Plaintiff's
22 shredding of documents and transferring files to her personal email. (Id. ¶ 55.) Mihelich
23 recommended that Plaintiff be terminated, and Coronado supported the recommendation. (Id.
24 ¶¶ 55, 58.) Mihelich notified Plaintiff on April 27, 2010 that her employment was being
25 terminated. (Id. ¶ 64.)

26 On April 26, 2010, Mihelich had also informed Coronado about the trash bin of
27 documents that was discovered in Jerkovic's office, and recommended that Jerkovic be
28 terminated as well. (Id. ¶ 61.) Coronado concurred, and Mihelich notified Jerkovic of her

- 3 -

1 termination the same day as Plaintiff, April 27, 2010. (Id. ¶ 65.) Jerkovic attended the budget
2 retreat, but did not speak before the City Council. (Id. ¶ 19.) Jerkovic did speak with three
3 members of the City Council during a break at the retreat, but testified at deposition that she
4 has no reason to believe that Mihelich knew of the content of her communication with those
5 council members. (Id. ¶ 20.)

6 In June of 2010, the City Council voted to approve the budget, including the changes
7 to the Economic Development Department. (Id. ¶ 67.) As part of this reorganization, the city
8 eliminated two EDC positions, including the position previously held by Plaintiff. (Id. ¶ 68.)

## II.     Procedural Background

10 Plaintiff filed suit against Defendants, alleging a single claim under 42 U.S.C. § 1983.
11 (Doc. 1.) Plaintiff's complaint alleges that her termination by Defendants was in retaliation
12 for her speech before the City Council, and thus that Defendants violated her constitutional
13 right to freedom of speech. (Id.)

14 This Court has jurisdiction over the suit under 28 U.S.C. § 1331, and venue is proper
15 under 28 U.S.C. § 1391(b). Defendants now bring this motion for summary judgment against
16 Plaintiff. (Doc. 52.)

## LEGAL STANDARD

18 A court must grant summary judgment if the pleadings and supporting documents,
19 viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine
20 dispute as to any material fact and the movant is entitled to judgment as a matter of law."
21 Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.
22 Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines
23 which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also
24 Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit
25 under the governing law will properly preclude the entry of summary judgment." Anderson,
26 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that
27 a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d
28 at 1130.

1    A principal purpose of summary judgment is "to isolate and dispose of factually
2 unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against
3 a party who "fails to make a showing sufficient to establish the existence of an element
4 essential to that party's case, and on which that party will bear the burden of proof at trial."
5 Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The
6 moving party need not disprove matters on which the opponent has the burden of proof at
7 trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not
8 produce evidence "in a form that would be admissible at trial in order to avoid summary
9 judgment." Id. at 324. However, the nonmovant must set out specific facts showing a genuine
10 dispute for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,
11 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

12    A government employee alleging that he has been subject to retaliation for exercising
13 his rights under the First Amendment must prove: (1) that the employee's conduct was
14 constitutionally protected; and (2) that the conduct was "a substantial or motivating factor"
15 for the alleged retaliation. Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 750
16 (9th Cir. 2001) (citing Board of County Comm'rs v. Umbehr, 518 U.S. 688, 675 (1996)).
17 Even if the employee can show these two elements, however, "the government can escape
18 liability by showing that it would have taken the same action even in the absence of the
19 protected conduct." Board of County Comm'rs, 518 U.S. at 675.

## DISCUSSION

21    Defendants move for summary judgment on Plaintiff's claim that she was terminated
22 in retaliation for exercise of her constitutionally protected right to free speech. (Doc. 52.)
23 Defendants assert that Plaintiff's claim must fail, because: (1) the reorganization which
24 would have resulted in Plaintiff's termination was proposed before Plaintiff spoke to the City
25 Council; (2) Plaintiff fails to assert facts sufficient to create a genuine dispute as to whether
26 Plaintiff's speech was a substantial or motivating factor in her termination; and (3) because
27 both the City and Mihelich are subject to immunity. (Id.)

28    Plaintiff responds by arguing that she has asserted sufficient facts from which a

1 reasonable jury could infer that her speech was a substantial or motivating factor for her
2 termination. (Doc. 56.) According to Plaintiff, the proximity in time between her speech to
3 the City Council on April 24 and her termination the following Monday, April 26, is
4 sufficient circumstantial evidence from which a jury could find retaliation. (Id.) Similarly,
5 Plaintiff argues that she has asserted sufficient facts from which a jury could infer that
6 Defendants' proffered explanations for Plaintiff's termination were mere pretext. (Id.)

7 After consideration of the parties' positions, and upon review of all disputed and
8 undisputed facts, the Court finds that Plaintiff fails to allege specific evidence sufficient to
9 support a genuine dispute of material fact. Even making all reasonable inferences from the
10 facts in favor of Plaintiff, the Court finds that Plaintiff fails to contradict Defendants' claim
11 that Plaintiff's position was proposed to be eliminated prior to Plaintiff's speech before the
12 City Council.

13 It is undisputed that Mihelich informed Plaintiff and others in her department of the
14 proposed reorganization on or around April 14, and that Plaintiff soon after became aware
15 that her position specifically was up for elimination. It is also undisputed that the
16 reorganization was proposed as part of the new budget for the upcoming fiscal year, and that
17 the proposal was not retaliatory toward Plaintiff or anyone in the department. Thus,
18 Plaintiff's position as an EDC was already being contemplated for termination well before
19 Plaintiff's speech, and Plaintiff does not contend that the reorganization itself was retaliatory.

20 Rather, Plaintiff contends that it was her accelerated termination which shows a
21 retaliatory motive on the part of Defendants. The Court finds that Plaintiff fails to establish
22 a genuine issue of material fact on this point as well. It is undisputed that the City's
23 information Security Officer, Busby, was concerned with Plaintiff's emailing of city
24 documents to her personal email prior to the City Council retreat. It is also undisputed that
25 Mihelich gave Plaintiff coaching and support in speaking before the City Council. Plaintiff
26 was then seen shredding documents by Mihelich, City Attorney Bailey, and HR Director
27 Reynolds, and that Mihelich and Reynolds then met with Plaintiff to discuss her emailing of
28 City documents to her personal email. Finally, it is undisputed that Jerkovic, who did not

speak before the City Council, was terminated on the same day as Plaintiff, after it was discovered that Jerkovic too had discarded City documents.

Plaintiff's evidence that her termination was motivated by her speech before the City Council, on the other hand, rests on speculation; Plaintiff merely second-guesses the legitimate reasons proffered by Defendants, and bases her speculation solely on her own avowals that the proximity in time between her speech and her termination alone is enough to infer improper motive. (Doc. 56.)

The Court disagrees, and finds that Plaintiff has failed to allege specific facts sufficient to establish the existence of a genuine dispute for trial. In light of the fact that the proposed termination of Plaintiff's position pre-dated her speech to the City Council, and that another department employee was terminated at the same time for the same reason, Plaintiff's claims of improper retaliation do not raise a genuine issue of fact. Thus, the Court finds that summary judgment in favor of Defendants is appropriate.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 52.)

DATED this 30th day of September, 2012.

Stephen M. McNamee
Senior United States District Judge